UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELISSA A. JOHNSON,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　　　Defendant. | NO. C11-5668-RAJ-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Melissa A. Johnson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

I.  FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1981, and was twenty-six years old when she filed her application for SSI benefits. Administrative Record ("AR") at 134. She has sixth grade education. AR at 143. Her past work experience includes employment as a kitchen helper, housekeeper, and waitress. AR at 63, 146. Plaintiff was last gainfully employed in April 2005. AR at 146.

REPORT AND RECOMMENDATION - 1

On July 21, 2008, plaintiff filed a claim for SSI benefits, alleging disability beginning October 15, 2006. AR at 134-36. Plaintiff subsequently amended her alleged onset date to December 29, 2008, the date she completed substance abuse treatment. AR at 14, 36. Plaintiff asserts that she is disabled due to degenerative disc disease of the lumbar spine, hepatitis C, depression, anxiety, and a history of substance abuse. AR at 16.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 74-77, 81-82. Plaintiff requested a hearing which took place on May 27, 2010. AR at 35-70. On June 18, 2010, the ALJ issued a decision finding plaintiff not disabled. AR at 14-28. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On August 24, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

REPORT AND RECOMMENDATION - 2

1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Johnson bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity."[1] 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 18, 2008, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since December 29, 2008, the amended alleged disability onset date.

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, hepatitis C, depression, anxiety, and a history of substance abuse.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about 6 hours in an 8 hour day, and sit for at least 6 hours in an 8 hour day. The claimant is able to do occasional crouching, crawling, stooping, balancing, kneeling, and climbing of ramps and stairs. However, the claimant is unable to climb ladders, ropes, and scaffolds. She is unable to do any commercial driving or work around hazards such as unprotected heights, dangerous or moving machinery, or open flames. Mentally, the claimant is limited to one or two step unskilled, simple, repetitive tasks. Although she is able to have occasional contact with co workers and supervisors, she is unable to have public contact. The claimant is unable to tolerate occupational exposure to drugs or alcohol, and she is limited to jobs requiring only occasional adaptation to workplace change. She is further limited to performing low stress jobs which do not involve strict production quotas such as those found in assembly line work.

5. The claimant is unable to perform any past relevant work.

REPORT AND RECOMMENDATION - 5

6. The claimant was born on XXXXX, 1981 and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7. The claimant has a marginal education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 21, 2008, the date the application was filed.

AR at 16-28.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in his treatment of the medical evidence?

2. Did the ALJ err in evaluating plaintiff's credibility?

3. Did the ALJ err in assessing plaintiff's RFC?

4. Did the ALJ err in posing a hypothetical to the vocational expert?

Dkt. No. 12 at 1.

## VII. DISCUSSION

A. <u>The ALJ Erred in His Treatment of the Medical Evidence.</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

(9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather that the doctors', are correct." *Id.* Such conclusions must at all times be supported by substantial evidence. *Id.*

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96–6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn v. Astrue*, 495 F.3d 625, 632–33 (9th Cir. 2007).

Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, "[s]ince there is a requirement to consider all relevant evidence in an individual's case record," the ALJ's decision "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p. "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or

REPORT AND RECOMMENDATION - 7

otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Kimberly Wheeler, Ph.D., Keith Kruger, Ph.D., Jeff Bremer, Ph.D., and Michael Regets, Ph.D., regarding her mental impairments; and the opinions of Allen Sinclair Chen, M.D., James F. Kruidenier, M.D., and Michael P. Myers, PA-C, regarding her physical impairments. Dkt No. 12 at 3–13. The Commissioner does not respond directly to plaintiff's arguments, and instead argues only that the ALJ's interpretation of the conflicting medical evidence was reasonable and cannot be second-guessed. Dkt. No. 15 at 8.

1. *Kimberly Wheeler, Ph.D., Keith Kruger, Ph.D., and Jeff Bremer, Ph.D.*

Examining psychologist Kimberly Wheeler, Ph.D., evaluated plaintiff on three occasions for the Washington State Department of Social and Health Services ("DSHS"). AR at 202-27, 352-64. On September 20, 2007, Dr. Wheeler diagnosed methamphetamine dependence, cannabis dependence, attention deficit hyperactivity disorder ("ADHD") combined type, and mood disorder NOS. AR at 213. She suggested bipolar disorder was unlikely as plaintiff did not present with hallmark symptoms of mania. *Id.* She opined that plaintiff had "marked" limitations in her ability "to relate appropriately to co-workers and supervisors," and "to control physical or motor movements and maintain appropriate behavior," and "severe" limitations in her ability "to respond appropriately to and tolerate the pressures and expectations of a normal work setting." AR at 214.

On reevaluation April 10, 2008, she diagnosed polysubstance dependence (in early remission), ADHD combined type, mood disorder NOS, anxiety disorder, and panic disorder with agoraphobia. AR at 230. At the time, plaintiff was reportedly "4 mos clean of meth" and

REPORT AND RECOMMENDATION - 8

was interested in intensive outpatient program ("IOP") drug treatment. *Id.* She opined that plaintiff had "marked" limitations in her ability "to understand, remember, and follow complex (more than two step) instructions," "to relate appropriately to co-workers and supervisors," and "to respond appropriately to and tolerate the pressures and expectations of a normal work setting," and "severe" limitations in her ability "to control physical or motor movements and maintain appropriate behavior." AR at 204.

On July 8, 2008, clinical psychologist Jeff Bremer, Ph.D., conducted a consultative psychological evaluation of the plaintiff. AR at 228-34. Dr. Bremer's mental status examination indicated plaintiff was "hepped up" and "anxious," but "reasonably tolerated a decidedly noisy examination setting." AR at 230. "She seemed eager to please . . . [and] gave every indication of trying her best. Frustration tolerance and tolerance for ambiguity were good." *Id.* Dr. Bremer found plaintiff's "general level of intellectual functioning is solidly in the average, as reflected by [her] WAIS III scores." AR at 231. Based on his examination, Dr. Bremer diagnosed plaintiff with major depression, panic disorder, amphetamine dependence (48 days reported remission), cannabis abuse (in reported remission), rule out ADHD, and personality disorder. AR at 233. He assigned her a global assessment of functioning ("GAF")[3] score of 60, indicating moderate symptoms or moderate difficulty in social, occupation, or school functioning. DSM-IV-TR at 34.

On April 29, 2009, Keith Krueger, Ph.D., examined plaintiff and completed a DSHS psychological evaluation form. AR at 288-95. Dr. Krueger diagnosed plaintiff with amphetamine and cannabis dependence (in reported remission four months), anxiety disorder,

---

[3] The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000) ("DSM-IV-TR").

REPORT AND RECOMMENDATION - 9

personality disorder, and rule out ADHD. AR at 289. He opined that plaintiff had "marked" limitations in her ability "to interact appropriately in public contacts," and "to respond appropriately to and tolerate the pressure and expectations of a normal work setting." *Id*.

The ALJ rejected the opinions of Dr. Wheeler and Dr. Krueger because "the opinions are unsupported by the objective clinical findings and are inconsistent with the evidence considered as a whole." AR at 25. Specifically, the ALJ noted that "Dr. Bremer's mental status examination performed on July 8, 2008, was largely intact." *Id*. "Dr. Bremer's mental status examination showed that the [plaintiff] reasonably tolerated a decidedly noisy examination setting. She seemed eager to please; she gave every indication of trying her best; frustration tolerance and tolerance for ambiguity were good." AR at 25.

The ALJ's finding that the opinions of Dr. Wheeler and Dr. Krueger were not based on objective evidence is not supported by the record. Dr. Wheeler indicated that she relied, in part, on plaintiff's test results on the Beck Anxiety Inventory (BAI), Trail-making test (TMT), mental status examination, and her objective observations. AR at 202, 206-211, 212, 216-23. Similarly, Dr. Krueger indicated that he relied on the Wechsler Adult Intelligence Scale-3d edition (WAIS-III) performed by Dr. Bremer, mental status examination, and Personality Assessment Inventory (PAI). AR at 288, 231-33, 291, 292-95. Thus, both Drs. Wheeler and Krueger supported their opinions with objective clinical findings.

Regarding the ALJ's finding that the opinions of Dr. Wheeler and Dr. Krueger were "inconsistent with the evidence considered as a whole," the Court finds that this reason is not specific, legitimate, or supported by substantial evidence. While the ALJ cites mental status examination findings and test scores by Dr. Bremer, these findings do not contradict the functional limitations assessed by Dr. Wheeler and Dr. Krueger, such as the ability to respond

REPORT AND RECOMMENDATION - 10

appropriately to and tolerate the pressures and expectations of a normal work setting.

Furthermore, the ALJ ignored Dr. Bremer's written discussion regarding his findings:

> Ms. Johnson presents as a highly anxious, avoidant, recurrently depressed, separated, 26-year-old woman of solidly average intelligence whose primary limitation, with regard to work-related limitations, is (in her words) "people." She is highly avoidant. She doubts her own abilities to do virtually anything, relying on others, often at her peril. Self-esteem, at best, is fledgling.
>
> Ms. Johnson is also recurrently depressed, leaving her even more isolated, withdrawn, and reclusive. There appeared to be a distinctly self-defeating quality to the many choices which predictably lead to her being harmed, neglected, and abused.
>
> Ms. Johnson does not have learning disabilities in reading, writing, or math. Her reading and writing skills are entirely functional. She appears to have learned as much math, reading, and writing as would be expected, given her educational history. With some adult basic education, concurrent with psychiatric and psychotherapeutic support, she should be able to get a GED.
>
> Ms. Johnson is fairly early – reportedly, 48 days – clean from methamphetamine. The importance of ongoing relapse prevention – including AA/NA sponsorship, and phase three treatment – cannot be over emphasized. She remains at reasonably high risk of relapse, given her tenuous and precarious psychiatric status.
>
> Ms. Johnson does not present with "memory problems" per se. That said, I do not doubt that her abilities to attend to and concentrate on, and hence remember, varied stimuli varies as a function of perceived anxiety, stress, and depression. These cognitive capacities would be expected to increase with improved and continued psychiatric treatment.

AR at 233-34. Because Dr. Bremer did not provide an opinion regarding any specific functional limitations, it is not clear that his opinion contradicts the opinions of Drs. Wheeler and Krueger. The ALJ's reference to the opinion of Dr. Bremer is not substantial evidence or a specific and legitimate reason for giving less weight to the opinions of Dr. Wheeler and Dr. Krueger. On remand, the ALJ must reassess the opinions of Drs. Wheeler, Krueger, and Bremer.

//

//

REPORT AND RECOMMENDATION - 11

2. *New Medical Evidence*

On June 3, 2010, after the administrative hearing but before the ALJ issued his decision, Dr. Wheeler conducted a third evaluation of the plaintiff. AR at 352-64. Dr. Wheeler diagnosed plaintiff with methamphetamine, cannabis, and alcohol dependence in reported remission, anxiety disorder, personality disorder, and rule out ADHD. AR at 356. She noted that plaintiff's face, mouth, and forearms were covered with, what appeared to be, crystal methamphetamine sores. AR at 352, 357, 359, 360. Dr. Wheeler stated that "IF she is clean, then the level of anxiety is profound, and likelihood of ADHD is greater. She can't sit still, can't focus, rambles, limb movements are jerky and unregulated. Would never get hired in this state." AR at 359.

Plaintiff argues that the ALJ erred in failing to discuss this evidence. Dkt. No. 12 at 9. Although plaintiff transmitted Dr. Wheeler's psychological evaluation to the ALJ four days before the ALJ issued his decision – the record before the ALJ does not include Dr. Wheeler's evaluation, and there is no indication in the record that Dr. Wheeler's evaluation was received by the ALJ. AR at 29-32; Dkt. No. 17, App. 1. Plaintiff provided the additional evidence to the Appeals Council following the ALJ's June 18, 2010 decision. AR at 4-5, 8-9. After reviewing the additional evidence, the Appeals Council concluded that it did not provide a basis for reversing the ALJ's decision. AR at 1-2. Plaintiff asserts that this new evidence shows that the ALJ's decision is not supported by substantial evidence and is based on legal error. Dkt. No. 12 at 22.

The Ninth Circuit has recently held that the Court may consider additional evidence submitted to the Appeals Council for the purposes of determining "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993)). Here, however, the Court does not have

REPORT AND RECOMMENDATION - 12

to decide whether Dr. Wheeler's psychological evaluation would justify a remand. Because this matter is being remanded, and these materials are part of the record, the ALJ should consider Dr. Wheeler's June 3, 2010 evaluation as part of his reevaluation of the medical evidence.

3. *Michael Regets, Ph.D.*

On September 29, 2008, State agency psychologist Dr. Regets reviewed the record and completed a Mental Residual Functional Capacity Assessment ("MRFC") of the plaintiff. (AR at 255-58.) In Section I of the MRFC, titled "Summary Conclusions," Dr. Lysak indicated plaintiff was "moderately limited" in her ability "to understand and remember detailed instructions," "to carry out detailed instructions," "to maintain attention and concentration for extended periods," "to sustain an ordinary routine without special supervision," "to work in coordination with or proximity to others without being distracted by them," "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "to interact with the general public." AR at 256.

In Section III, titled "Functional Capacity Assessment," Dr. Regets opined that plaintiff was capable of simple tasks and some detailed tasks, and was able to concentrate for two hours at a time. AR at 257. He stated that plaintiff would "do best if she remains clean and sober." *Id*. Regarding social functioning, Dr. Regets noted that plaintiff was capable of interacting with doctors and their staff, and that plaintiff would "do best working in a clean and sober work environment." *Id*.

Plaintiff argues that the ALJ failed to include in his RFC assessment all of the moderate limitations described by Dr. Regets in Section I of the MRFC. Dkt. No. 12 at 11-12. However, as explained in the agency's Program Operations Manual, an ALJ properly focuses on the

"narrative" portion of the MRFC form, rather than the "Summary Conclusions" portion. *See* Program Operations Manual System ("POMS") DI 25020.101(B)(1). The POMS provides,

> The purpose of section I ("Summary Conclusion") on the SSA-4734-F4-SUP is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-4734-F4-SUP **that adjudicators are to use as the assessment of RFC**. Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

*Id*. It is clear that the ALJ acted in accordance with the agency's established procedures when he relied on the narrative portion of Dr. Regets' opinion set forth in the Functional Capacity Assessment rather than on the limitations recorded in the Summary Conclusions section. Accordingly, the ALJ properly evaluated Dr. Regets' opinion.

4. *Allen Sinclair Chen, M.D., James F. Kruidenier, M.D., and Michael P. Myers, PA-C*

On October 18, 2008, Allen Sinclair Chen, M.D., conducted a consultative internal medicine examination of the plaintiff. AR at 273-77. Dr. Chen noted plaintiff could "ambulate down the hall and in the parking lot without any issues." AR at 274. She was able to sit in the waiting room and during the examination with no discomfort. *Id*. She also had no trouble getting on or off the examination table or taking her shoes off. *Id*. Dorsolumbar straight leg raises were mildly positive bilaterally, and she had mild tenderness in her mid lower back. AR at 276. She had 5/5 muscle strength throughout her upper and lower extremities with normal muscle bulk and tone. *Id*.

Based on his examination, Dr. Chen diagnosed plaintiff with low back pain with bilateral radicular symptoms. AR at 276. He opined that the number of hours plaintiff could stand, walk,

REPORT AND RECOMMENDATION - 14

and sit in an eight-hour work day was without limitation. *Id*. He noted that plaintiff did not employ any assistance devise, nor was any medically necessary. *Id*. He further found that the amount of weight plaintiff could lift and/or carry both frequently and occasionally was without restrictions. *Id*. He opined that plaintiff had some mild postural limitations on bending, stooping, and crouching, and could perform these frequently; limitations were secondary to decreased range of motion. *Id*. He opined that plaintiff had no limitations on reaching, handling, feeling, grasping, and fingering. *Id*.

James F. Kruidenier, M.D., examined plaintiff on March 31, 2010, for possible diagnosis of hepatitis C. AR at 315-17. Dr. Kruidenier noted plaintiff had been drinking 20-40 ounces of beer a day up until about one week ago, and had been using drugs up until about one year ago. AR at 315. He reported that plaintiff had probable hepatitis C, and that it would be important for her to maintain alcohol and drug abstinence. AR at 316-17.

On August 13, 2007 and April 2, 2008, physician's assistant Michael P. Myers, PA-C, completed a DSHS physical evaluation form. AR at 241-44, 250-52. He diagnosed plaintiff with bipolar disorder, attention deficit disorder ("ADD"), and endometriosis. AR at 243, 250. He opined that these conditions caused moderate limitations in her ability to lift, handle, carry, hear, communicate, and understand or follow directions. *Id*. He further opined that plaintiff was limited to sedentary work.[4] *Id*.

Plaintiff argues that the ALJ improperly discredited Mr. Myers' opinion. Under the regulations, physicians' assistants are considered "other sources," not "acceptable medical sources." 20 C.F.R. § 404.1513(d)(1); SSR 06-03p. Accordingly, the ALJ could reject his opinion by providing germane reasons. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

---

[4] Sedentary work "means the ability to lift 10 pounds maximum and frequently lift and/or carry such articles as files and small tools. A sedentary job may require sitting, walking and standing for brief periods." AR at 243, 250.

REPORT AND RECOMMENDATION - 15

The ALJ discredited Mr. Myers' opinion that plaintiff was limited to sedentary work as he indicated that her limitations would last 90 days to 12 months, and as such did not establish disability for a continuous period of 12 months. AR at 23, 244, 252. This is not a germane reason to reject Mr. Myers' opinion. While it may be relevant to whether plaintiff's disability is for a closed period, it is not probative of Mr. Myers' opinion about plaintiff's impairments and limitations.

Next, the ALJ stated that Mr. Myers' opinion is generally consistent with the RFC assessment. AR at 23. The ALJ does not explain how a limitation to sedentary work is consistent with a RFC finding that she could perform light work. Accordingly, this is not a germane reason to discredit Mr. Myers' opinion.

Finally, the ALJ discredited Mr. Myers' opinion that plaintiff was limited to sedentary work as Dr. Chen's examination did not support plaintiff's allegations of serious back pain, there was no evidence of motor, sensory, or reflex loss, and she has not required surgery. *Id*. This is a germane reason to reject Mr. Myers' opinion that plaintiff was limited to sedentary exertion. Although Dr. Chen found plaintiff had low back pain with bilateral radicular symptoms, which caused some mild postural limitations secondary to decreased range of motion – he opined that these symptoms did not interfere with plaintiff's ability to stand, walk, sit, lift and/or carry frequently and occasionally. AR at 276. Inconsistency with the record is a germane reason for discrediting lay testimony. *See, e.g., Bayliss*, 427 F.3d at 1218 (holding inconsistency with medical evidence is a germane reason for discrediting lay testimony); *Lewis v. Apfel*, 236 F.3d 502, 512 (9th Cir. 2001) (contradictory medical records supported ALJ's rejection of lay testimony as to symptoms). Although plaintiff has urged an alternative interpretation of the record, the ALJ did not err in his assessment of Mr. Myers' opinion.

Plaintiff also argues that the ALJ erred by "failing to acknowledge that Dr. Kruidenier's diagnosis of Hepatitis C is objective medical evidence which supports Johnson's allegations of fatigue." Dkt. No. 12 at 13. The ALJ is not required to discuss all evidence presented to him. *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981)). The ALJ need only explain why "significant probative evidence has been rejected." *Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981). Here, the ALJ did not reject Dr. Kruidenier's opinion, but found plaintiff had Hepatitis C based on his diagnosis. AR at 16. The ALJ was not required to discuss evidence he did not reject. While Hepatitis C may cause fatigue, Dr. Kruidenier made no objective findings to support such a medical conclusion and did not express that opinion. Thus, although plaintiff has been diagnosed with Hepatitis C, there is nothing objective to confirm this is the source of plaintiff's fatigue complaints. The Court declines to find that the ALJ erred by "failing to acknowledge that Dr. Kruidenier's diagnosis of Hepatitis C is objective medical evidence which supports Johnson's allegations of fatigue."

B. The ALJ Erred in Evaluating Plaintiff's Credibility

A determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. *Id.* Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because it is unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Id*. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Id*.

In this case, there was no evidence that plaintiff was malingering. Consequently, the ALJ was required to provide clear and convincing reasons to reject her testimony. The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. *Id*. The ALJ offered two reasons to support this decision: (1) plaintiff's daily activities were inconsistent with her alleged functional limitations, AR at 23, and (2) plaintiff's subjective complaints regarding her alleged functional limitations were not supported by the objective clinical findings, AR at 19.

The ALJ erred in finding plaintiff's daily activities – "bath[ing], chang[ing] clothes, eat[ing], attend[ing] meetings," performing "household chores" and "car[ing] for 2 children" – were inconsistent with her alleged functional limitations. AR at 23. The Ninth Circuit "'has repeatedly asserted that the mere fact that a plaintiff had carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'" *Orn*, 495 F.3d at 639 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled.")). Daily activities may be grounds for an adverse credibility determination only if (1) the activities contradict the claimant's other testimony, or (2) the activities "meet the threshold for transferable work skills." *Id*. "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a

REPORT AND RECOMMENDATION - 18

claimant's daily activities warrant an adverse credibility determination." *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ did not make any specific findings that plaintiff's daily activities were transferable to a work setting, or contradicted any of her other testimony. Although the ALJ correctly noted that "[t]he performance of household chores and other daily activities may be considered in evaluating the credibility of the claimant's functional limitations," AR at 23, the ALJ failed to specify which of plaintiff's alleged functional limitations was contradicted by which of plaintiff's daily activities, committing legal error.

In addition, the ALJ erred in relying on a lack of support from the objective medical evidence to reject plaintiff's testimony. As stated above, once a claimant has produced medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because it is unsupported by objective medical evidence. *Bunnell*, 947 F.2d at 343; *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("[I]t is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings."). Because the ALJ concluded that plaintiff's degenerative disc disease, Hepatitis C, depression, and anxiety constituted severe impairments, the ALJ could not thereafter discredit plaintiff's testimony regarding the severity of her symptoms solely because her testimony was unsupported by objective medical evidence. Because the ALJ's other reason for rejecting plaintiff's testimony fails, the lack of corroborating objective medical evidence alone cannot support the adverse credibility finding.

Accordingly, the Court finds that the reasons proffered by the ALJ are not clear and convincing reasons for discrediting plaintiff's testimony as to the severity of symptoms. On remand, the ALJ should reassess plaintiff's testimony and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

REPORT AND RECOMMENDATION - 19

C. <u>The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity</u>.

As discussed above, the ALJ erred in his assessment of the medical evidence requiring remand. Accordingly, on remand, after properly evaluating the medical evidence, the ALJ will reevaluate plaintiff's RFC.

D. <u>The ALJ Erred in Posing a Hypothetical to the Vocational Expert</u>.

Finally, plaintiff argues that the ALJ erred in finding she was able to perform the jobs of photocopy machine operator, office cleaner, and laundry press operator because the hypothetical posed to the vocational expert ("VE") did not include all of her limitations. Because the Court recommends remand for further consideration of the medical evidence and the RFC, the ALJ will necessarily have to conduct a new step five analysis that incorporates any changes in plaintiff's RFC. If the ALJ's RFC assessment is revised, the ALJ will also call a VE to testify about jobs that may exist with a properly framed hypothetical that incorporates all of plaintiff's limitations.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 30th day of April, 2012.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge